IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**COURTNEY RENE CRAMER,**
*Petitioner,*

*v.*

**HON. PATRICIA ANN STARR,** JUDGE OF THE SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,
*Respondent Judge,*

**TAMMY MUNGUIA,** INDIVIDUALLY, AND **FRANCINE BEJARANO,** INDIVIDUALLY,

*Real Parties in Interest.*

No. CV-15-0317-PR
Filed July 18, 2016

Special Action from the Superior Court in Maricopa County
The Honorable Patricia A. Starr, Judge
No. CV2012-016960
**REVERSED AND REMANDED**

Order of the Court of Appeals, Division One
No. 1 CA-SA 15-0216
Filed Sept. 8, 2015

COUNSEL:

Thomas C. Hall, Christopher Robbins (argued), Hill, Hall & DeCiancio,
PLC, Phoenix, Attorneys for Courtney Rene Cramer

Geoffrey M. Trachtenberg (argued), Justin Henry, Levenbaum
Trachtenberg, PLC, Phoenix; Francisco X. Gutierrez, Gutierrez Law Firm,
PC, Phoenix; and Julio M. Zapata, Zapata Law, PLLC, Phoenix, Attorneys
for Tammy Munguia and Francine Bejarano

Andrew J. Petersen, Humphrey & Petersen, P.C., Tucson, Attorney for Amicus Curiae Tucson Defense Bar, Inc.

Barry D. Halpern, Paul J. Giancola, Sarah E. Delaney, Snell & Wilmer L.L.P., Phoenix, Attorneys for Amicus Curiae Arizona Medical Association and Mutual Insurance Company of Arizona

Stanley G. Feldman, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson; and David L. Abney, Knapp & Roberts, P.C., Scottsdale, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Jeffrey C. Warren, Amanda Heitz, Bowman and Brooke LLP, Phoenix; and Charles Callahan, Jones, Skelton & Hochuli, PLC, Phoenix, Attorneys for Amicus Curiae Arizona Association of Defense Counsel

––––––––––––––––

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, and JUSTICES BRUTINEL, TIMMER, and BOLICK joined.

––––––––––––––––

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1 Under Arizona's comparative fault regime, "[i]n assessing percentages of fault" in a personal injury action, "the trier of fact shall consider the fault of all persons who contributed to the alleged injury." A.R.S. § 12-2506(B). In allocating fault, the trier may consider a nonparty's negligence or fault if the defendant, pursuant to Arizona Rule of Civil Procedure 26(b)(5), gives notice that "a nonparty was wholly or partially at fault." *Id.* In view of these statutory directives, we today hold that the common law "original tortfeasor rule" ("OTR") does not preclude a defendant from alleging and proving, or the trier of fact from considering and finding, fault of a nonparty physician who treated the plaintiff for injuries allegedly sustained from the defendant's tort.

¶2 We further hold that under the OTR, an actor who negligently causes an injury that reasonably necessitates medical treatment may also be liable for any enhanced harm proximately resulting from the actor's

2

negligence, including subsequent injury and related damages negligently but foreseeably caused by a medical provider. Any such liability, however, results not from automatically imputing the medical negligence to the original tortfeasor, but instead depends on the trier of fact's assessment and allocation of fault between the parties and nonparties, in accordance with Arizona's statutes.

## I.

¶3        In November 2010, a car driven by Courtney Cramer rear-ended a vehicle in which Tammy Munguia was a passenger. Munguia complained of headaches that same day and began chiropractic treatment a few days later. Because of persistent low back pain, Munguia had an MRI, which revealed several disc protrusions in her lumbar spine.

¶4        Approximately eight months after the accident, John Ehteshami, M.D., examined Munguia and recommended spinal fusion surgery to treat her back pain. In September 2011, Dr. Ehteshami performed that operation, which did not cure Munguia's symptoms and might have exacerbated her condition.

¶5        After the unsuccessful surgery, Munguia filed this personal injury action against Cramer. At Cramer's request, Zoran Maric, M.D., conducted an independent medical examination and found no objective evidence that Munguia sustained any spinal injuries as a result of the car accident. Dr. Maric opined that the spinal fusion performed by Dr. Ehteshami was medically unnecessary and "effectively disabled" Munguia.

¶6        Based on that information, Cramer filed a notice naming Dr. Ehteshami as a nonparty at fault. *See* Ariz. R. Civ. P. 26(b)(5). Munguia moved for partial summary judgment to strike that notice, arguing that (1) the notice was untimely, and (2) under the OTR, Cramer, as the original tortfeasor, was liable for the foreseeable risks arising from her tort, including subsequent medical negligence. The trial court rejected the first argument but granted the motion based solely on the second ground. Relying on the Restatement (Second) of Torts § 457 (Am. Law Inst. 1965) ("Second Restatement § 457") and some out-of-state cases holding that "adoption of comparative fault has not superseded" the OTR, the court ruled that Cramer "may not name Dr. Ehteshami as a non-party at fault,"

but "may still dispute at trial whether Munguia reasonably sought medical care and/or reasonably selected her doctor."

¶7 The court of appeals declined jurisdiction of Cramer's special action. We granted review because the case presents an unsettled legal question that is of statewide interest and likely to recur. *See Piner v. Superior Court*, 192 Ariz. 182, 184 ¶ 7, 962 P.2d 909, 911 (1998) (granting review to address significant legal issue despite court of appeals having declined special action jurisdiction). We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶8 We review de novo the trial court's grant of partial summary judgment. *Weitz Co. v. Heth*, 235 Ariz. 405, 409 ¶ 11, 333 P.3d 23, 27 (2014). Because the pertinent facts are undisputed, we must determine whether Munguia was entitled to judgment as a matter of law, precluding Cramer from naming Dr. Ehteshami as a nonparty at fault. *See* Ariz. R. Civ. P. 56(a).

¶9 Cramer argues that the trial court, by striking her notice, erroneously "took the issue of comparative fault from the jury," in violation of A.R.S. § 12-2506. She also asserts that Second Restatement § 457, on which the trial court relied, "could never trump that controlling Arizona statute and case law" and, in any event, has been superseded by Restatement (Third) of Torts, Liability for Physical and Emotional Harm § 35 (Am. Law Inst. 2009) ("Third Restatement § 35").

¶10 Munguia counters that Arizona courts have long embraced the OTR embodied in Second Restatement § 457 (as retained and broadened in Third Restatement § 35), a rule she characterizes as one of causation that was not displaced or abrogated by the Uniform Contribution Among Tortfeasors Act ("UCATA"). A.R.S. §§ 12-2501 through -2509. Under the OTR, Munguia asserts, Cramer "cannot escape or reduce her liability by claiming harm was caused by non-party Dr. Ehteshami," but rather she is independently liable "for any and all enhanced harm proximately resulting from her actions" and "foreseeably caused by a successive tortfeasor."

¶11 We agree with Cramer that UCATA applies and controls the outcome here. As first enacted in 1984, the Act allowed a tortfeasor who paid more than the percentage of damages attributed to it by the factfinder

4

to seek contribution from co-tortfeasors. A.R.S. § 12–2501; *Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 26 ¶ 20, 365 P.3d 944, 951 (2016). The legislature amended the Act three years later by generally "eliminating plaintiffs' ability to recover jointly from any or all liable defendants." *Watts*, 239 Ariz. at 26 ¶ 20, 365 P.3d at 951. With certain exceptions not applicable here, *see* § 12-2506(D), (F)(1), "the liability of each defendant for damages is several only." § 12-2506(A). Thus, "Arizona's pure comparative fault scheme protects defendants from bearing more than their fair share of liability for a plaintiff's injuries under the harsh common-law rule of joint and several liability." *Watts*, 239 Ariz. at 26 ¶ 20, 365 P.3d at 951 (citing *State Farm Ins. Co. v. Premier Manufactured Sys., Inc.*, 217 Ariz. 222, 224–25 ¶¶ 8–12, 172 P.3d 410, 412–13 (2007)).

**¶12**          "UCATA requires apportionment of damages based on degrees of fault." *Id.* at 26 ¶ 22, 365 P.3d at 951. Under § 12-2506(A), "[e]ach defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault." "Fault" is broadly defined as "an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery." § 12-2506(F)(2). UCATA is thus based on the concept of fault, which necessarily presupposes a duty, breach of duty, and causation. *Watts*, 239 Ariz. at 26 ¶ 22, 365 P.3d at 951.

**¶13**          Under A.R.S. § 12-2506(B), the trier of fact assesses percentages of fault after considering the fault of all persons who contributed to the alleged injury. That mandate applies "regardless of whether the person was, or could have been, named as a party to the suit." § 12-2506(B); *see Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 509, 511, 821 P.2d 166, 170, 172 (1991) (holding that "[w]hen an employer negligently contributes to an employee's injury, the joint tortfeasors may require the employer's negligence to be considered for the assessment of fault under A.R.S. § 12-2506," even though the employee, having received workers' compensation benefits, could not sue the employer and would have to repay the employer from any third-party recovery).

**¶14**          UCATA thus contemplates and permits the naming of nonparties whose alleged fault the trier of fact may consider in apportioning liability. "Negligence or fault of a nonparty may be considered . . . if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or

5

partially at fault." § 12-2506(B); *see* Ariz. R. Civ. P. 26(b)(5) (identifying procedural requirements for parties' providing notice of nonparty at fault pursuant to § 12-2506(B)); *Rosner v. Denim & Diamonds, Inc.*, 188 Ariz. 431, 433, 937 P.2d 353, 355 (App. 1996) ("Rule 26(b)(5) merely prescribes the method by which § 12-2506 is implemented and effectuated.").[1] And under § 12-2506(C), "the relative degrees of fault of all defendants and nonparties[] shall be determined and apportioned as a whole at one time by the trier of fact."

¶15 Our case law has consistently recognized and applied these principles. We have repeatedly held that under UCATA, the trier of fact must consider the fault of all parties and properly named nonparties in assessing and allocating percentages of fault. *See, e.g.*, *Premier Manufactured Sys., Inc.*, 217 Ariz. at 228 ¶ 30, 172 P.3d at 416 (stating that § 12-2506(F)(2)'s "broad definition of fault" requires the trier of fact "to compare fault among all tortfeasors"); *Piner*, 192 Ariz. at 188–89 ¶¶ 26–27, 962 P.2d at 915-16 (holding that although UCATA "left intact the rule of indivisible injury, relieving the plaintiff of apportioning damage according to causal contribution," § 12-2506 requires that "the factfinder [in an indivisible injury case] is to compute the total amount of damage sustained by the plaintiff and the percentage of *fault* of each tortfeasor"); *Sanchez v. City of Tucson*, 191 Ariz. 128, 133 ¶ 25, 953 P.2d 168, 173 (1998) (noting that under UCATA the state could name non-parties at fault and have the trier of fact

---

[1] The trial court rejected Munguia's argument that Cramer's notice of nonparty at fault should be stricken as untimely under Rule 26(b)(5). Munguia did not argue the timeliness issue in response to Cramer's petition for special action in the court of appeals, in response to Cramer's petition for review in this Court, or in any cross-petition for review here. Therefore, the issue was not preserved and is not before us, even though Munguia alternatively argued in her supplemental brief in this Court that Cramer's notice of nonparty at fault was untimely. *See State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d 1159, 1163 (1987) (failure to file a cross-petition for review of issue raised in but not decided by court of appeals "acts as a waiver"); *cf. Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 482, 724 P.2d 562, 568 (1986) (noting that generally a party waives an issue raised in neither the court of appeals nor in petition for review filed in this Court); Ariz. R. Civ. App. P. 23(f)(2). Nor do we address whether the medical malpractice requirements in A.R.S. §§ 12-2603 and -2604 apply to Cramer's notice of nonparty at fault and, if so, whether the notice is compliant.

apportion liability among them); *Dietz*, 169 Ariz. at 508, 510, 821 P.2d at 169, 171 (observing that under UCATA, the trier of fact must "consider the fault of *all* persons who contributed to the alleged injury," and each tortfeasor is "responsible for paying for his or her percentage of fault *and no more*") (quoting § 12-2506(B)).

¶16　　　　Munguia unpersuasively argues that § 12-2506(B) does not control because this case involves successive, not joint, tortfeasors, and Cramer is "severally liable for the full amount of damages" (including any that Dr. Ehteshami might have caused), but may seek contribution from him under A.R.S. § 12-2501. The argument is refuted by our case law. *See Piner*, 192 Ariz. at 189 ¶ 30, 962 P.2d at 916 (stating in case of successive tortfeasors and indivisible injury that "the jurors must be instructed to allocate fault in accordance with § 12-2506"); *Dietz*, 169 Ariz. at 510, 821 P.2d at 171 (finding that § 12-2506 prevailed over § 12-2501 and noting that, "[w]ith a few specified exceptions, contribution will become virtually unnecessary in actions filed after the effective date of § 12-2506"). The cases on which Munguia relies are materially distinguishable because they were anchored in well-established common law doctrines that implicated the statutory exceptions to several liability in § 12-2506(D). *See Young v. Beck*, 227 Ariz. 1, 5 ¶¶ 16-17, 251 P.3d 380, 384 (2011) (recognizing the family purpose doctrine as a "form of vicarious liability" that falls within the agency exception in § 12-2506(D)(2)); *Wiggs v. City of Phx.*, 198 Ariz. 367, 371 ¶¶ 13-14, 10 P.3d 625, 629 (2000) (same regarding the common-law, non-delegable duty doctrine, which UCATA did not abolish).

¶17　　　　In striking Cramer's notice of nonparty at fault, the trial court did not address Arizona's statutory requirements or related case law and erred in preventing the trier of fact from considering any potential fault of Dr. Ehteshami. Neither the court's ruling nor Munguia's argument can be reconciled with UCATA's clear directives. Section 12-2506(D) identifies various circumstances under which "a party is responsible for the fault of another person, or for payment of the proportionate share of another person." But those exceptions do not apply here. And the statutes contain no exception to UCATA's several-liability rule when (1) a medical provider's post-accident services, even if medically necessary and foreseeable, are allegedly negligent and cause the claimant to sustain new or enhanced injury, or, more broadly, (2) when a non-party at fault is a medical practitioner. *Cf. Dumas v. Louisiana*, 828 So. 2d 530, 537 (La. 2002)

(noting that state's pure comparative fault statute "makes no exceptions for liability based on medical malpractice").

¶18 Having named Dr. Ehteshami as a nonparty at fault, Cramer is entitled to have the trier of fact consider Dr. Ehteshami's alleged negligence "[i]n assessing percentages of fault." § 12-2506(B). The trier "shall . . . determine[] and apportion[] as a whole at one time" the relative degrees of fault of Cramer and Dr. Ehteshami. § 12-2506(C). As Cramer acknowledges, she bears the burden of proving any fault on Dr. Ehteshami's part.

**III.**

¶19 The trial court based its ruling on Second Restatement § 457, entitled "Additional Harm Resulting From Efforts to Mitigate Harm Caused by Negligence," which sets forth the OTR:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

The comments to that section indicate that when a negligent actor causes an injury that may require medical services, it is reasonably foreseeable that such services could be performed negligently, thereby adding to the original injury. In such cases, the original tortfeasor "is responsible for any additional injury resulting from the other's exposure" to the risk of negligently performed medical services. *Id.* cmt. b.

¶20 Our court of appeals has referred to and arguably relied on, but not expressly adopted, Second Restatement § 457. *See Ritchie v. Krasner*, 221 Ariz. 288, 299 ¶ 29, 211 P.3d 1272, 1283 (App. 2009) (finding § 457 "instructive" on whether substantial evidence supported jury's determination that independent medical examiner's negligence increased the risk of, and proximately caused, workers' compensation claimant's death); *Barrett v. Harris*, 207 Ariz. 374, 379 ¶¶ 17–18, 86 P.3d 954, 959 (App. 2004) (stating that "[a]lthough § 457 can apply to successive acts of medical malpractice," no evidence showed that doctor's consultation advice

proximately caused infant's death, and therefore "§ 457 did not apply to impute liability" to the doctor); *Transcon Lines v. Barnes*, 17 Ariz. App. 428, 430 n.1, 434, 498 P.2d 502, 504 n.1, 508 (1972) (noting in dicta, without deciding, that § 457 supported original tortfeasors' liability for enhanced damages (claimant's later death)). But as *Barrett* noted, "[n]o Arizona opinion has applied [Second] Restatement § 457." 207 Ariz. at 379 ¶ 15, n.4, 86 P.3d at 959 n.4.

**¶21** This Court has not addressed, let alone adopted, Second Restatement § 457.[2] "In Arizona, if there is no statute or case law on a particular subject, we have traditionally followed the Restatement of Laws," *Martinez v. Woodmar IV Condos. Homeowners Ass'n*, 189 Ariz. 206, 208, 941 P.2d 218, 220 (1997), and generally will embrace the Restatement if it prescribes "a sound and sensible rule," *Webster v. Culbertson*, 158 Ariz. 159, 162, 761 P.2d 1063, 1066 (1988). Here, however, UCATA and our case law clearly permit Cramer's notice of nonparty at fault and, assuming evidentiary support exists, require the trier of fact to consider Dr. Ehteshami's alleged negligence in assessing and allocating fault and to determine liability. Thus, to the extent Second Restatement § 457 can be read to preclude those procedures and to support the trial court's ruling, it is directly contrary to Arizona law and we reject it. *See Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 102, 800 P.2d 962, 968 (1990) ("Absent Arizona law to the contrary, this court will usually apply the law of the Restatement.").

**¶22** Based on UCATA, we likewise reject Munguia's assertion that the OTR should apply to automatically hold the original tortfeasor severally liable for all damages she proximately caused "because the fault, if any, of the negligent medical care is imputed to the original tortfeasor and is subsumed within the original tortfeasor's fault." That argument cannot be squared with UCATA's provisions defining "fault" and requiring the trier

---

[2] Inasmuch as Arizona courts have not adopted Second Restatement § 457 or any other form of the OTR, Munguia's assertion that "UCATA did not clearly and plainly abrogate the [OTR]" misses the mark. And contrary to her argument, we find no indication that the legislature "intended to codify" the OTR when it enacted § 12-2501, the contribution statute, in 1984. Moreover, as stated, the trial court's interpretation and application of § 457 to strike Cramer's notice of nonparty at fault is plainly inconsistent with § 12-2506.

of fact to consider, determine, and apportion the fault of all parties and properly named nonparties. § 12-2506(B), (C), (F)(2). Although we agree with Munguia's contention that the OTR is a rule of causation (treating the original tortfeasor as proximately causing certain later inflicted harm), not joint and several liability, that characterization does not alter our conclusion. UCATA displaced our prior common law under which multiple tortfeasors whose negligence proximately caused a particular injury would be jointly and severally liable. The OTR is a doctrine of causation and does not preclude applying UCATA. *Cf. Larsen v. Nissan Motor Corp. in U.S.A.*, 194 Ariz. 142, 146 ¶ 10, 978 P.2d 119, 123 (App. 1998) (observing that "the causation element is factored in as 'a necessary condition precedent to consideration of a person's fault' under [UCATA]") (quoting *Zuern v. Ford Motor Co.*, 188 Ariz. 486, 492, 937 P.2d 676, 682 (App. 1996)).

## IV.

**¶23**     The Restatement (Second) of Torts has been updated and revised by the Restatement (Third) of Torts. As it relates to the OTR, the Third Restatement generally reiterates Second Restatement § 457. *See* Third Restatement § 35, cmt. a. Entitled "Enhanced Harm Due to Efforts to Render Medical or Other Aid," Third Restatement § 35 provides:

> An actor whose tortious conduct is a factual cause of harm to another is subject to liability for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, so long as the enhanced harm arises from a risk that inheres in the effort to render aid.

*See also* 1 Dan B. Dobbs et al., *The Law of Torts*, § 211, at 740 (2d ed. 2011) (noting that the "original actor may be liable, for example, not only for the harm he directly causes, but also for the additional harm inflicted by . . . negligent medical treatment of [the first] injury," citing cases and Third Restatement § 35).

**¶24**     The Third Restatement emphasizes that adoption of several-only liability statutes like UCATA does not require or imply any change to the OTR. Third Restatement § 35 cmt. d. As Comment (d) explains, this is because "[m]odern adoption of pure several liability *limits the liability* of

10

each defendant liable for the same harm to that defendant's comparative share of the harm." *Id.* (emphasis added) (citing Restatement (Third) of Torts, Apportionment of Liability § 11). "Several liability, however, does not provide rules about *when* defendants are liable for harm that they caused." *Id.* (emphasis added). Instead, as Comment (d) clarifies, when "the [state's] governing law imposes several liability, each of the defendants is held liable for the amount of damages reflecting the enhanced harm *discounted* by the comparative share of responsibility assigned by the factfinder to that defendant." *Id.* (emphasis added).

**¶25** Thus, the OTR, now set forth in Third Restatement § 35, can be read in conjunction with the governing law of the state. When the state's law generally provides for several-only liability, as does UCATA, the OTR provides guidelines only regarding *when* a defendant may be subject to liability for future, enhanced harm that stems from the original negligent conduct—e.g., when the original tortfeasor's conduct created a reasonably foreseeable risk that future medical services may be necessary and that those services may be performed negligently. But the Third Restatement makes clear that the OTR yields to a state's law governing the apportionment of fault (and consequently, damages) based on the factfinder's determination of each potential tortfeasor's comparative share of responsibility. *See* 2 Dobbs, § 494, at 93 (noting that "under the traditional rule, a tortfeasor who causes injury is jointly and severally liable for any aggravation caused by a negligent health care provider, but under the several liability regime, the initial tortfeasor is liable only for his comparative fault share"); *see also Dumas*, 828 So. 2d at 537 (holding that under state's pure comparative fault statutes, the fault of both the defendant/tortfeasor and nonparty medical providers who treated the original injury "should be determined" and each tortfeasor "will be liable only for his portion of fault"). These fault-related issues, including causation, generally are questions of fact for a jury to resolve. *See* § 12-2506(B), (C), (F)(2); Third Restatement § 35, illus. 4; *see also Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9, 150 P.3d 228, 230 (2007).

**¶26** In sum, we harmonize the common law doctrine with Arizona's statutory scheme by adopting the OTR set forth in the Third Restatement § 35, but only to the extent it does not conflict with UCATA. Doing so is consistent with our embracing the Restatement (Third) of Torts, Liability for Physical and Emotional Harm § 32, the corollary to Third Restatement § 35, in *Espinoza v. Schulenberg*, 212 Ariz. 215, 217 ¶¶ 7-9, 129

P.3d 937, 939 (2006) (adopting the "rescue doctrine" set forth in Third Restatement § 32 and noting that "injury to a rescuer is a foreseeable result of the original negligence").

¶27 Subject to UCATA, the OTR can serve a useful purpose in cases like this. As stated earlier, the rule cannot be used to automatically impute to the original tortfeasor the subsequent negligence of a medical provider or other person who renders aid reasonably required by the original tortfeasor's act. But because UCATA defines fault as an actionable breach of duty that proximately caused the plaintiff's injury, § 12-2506(F)(2), plaintiffs remain free to argue under Third Restatement § 35 that an original tortfeasor proximately caused subsequent, enhanced injury and shares all or at least some responsibility for that injury. *See* Third Restatement § 35, cmt. d (noting that the "subsequent negligence of one rendering assistance to an injured person is not a superseding cause of any enhanced harm, thereby including such harm within the initial tortfeasor's scope of liability").

¶28 UCATA does not immunize or shield Cramer from liability for the enhanced harm allegedly caused by Dr. Ehteshami's negligence. If Munguia shows that the conditions of Third Restatement § 35 are met, Cramer will have proximately caused the enhanced harm, and her liability for such harm will be determined, consistent with UCATA, by the jury's assessment of comparative fault. *See* Third Restatement § 35.

## V.

¶29 The trial court erred in striking Cramer's notice of nonparty at fault based on Second Restatement § 457. We reverse that order and remand the case to the trial court for further proceedings consistent with this opinion.